UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **JOE HAND PROMOTIONS, INC.,** } | |
| } | |
| **Plaintiff,** } | |
| } | |
| v. } | Case No.: 2:22-CV-01471-MHH |
| } | |
| **CORDELL CARTER,** } | |
| } | |
| **Defendant.** } | |
| } | |
| } | |

## MEMORANDUM OPINION

This matter comes before the Court on Joe Hand Promotions, Inc.'s motion for a default judgment against the defendant Cordell Carter, individually and d/b/a Carter's Sports Bar. (Doc. 11). The clerk entered default on May 9, 2023 because Mr. Carter did not respond to Joe Hand Promotions's complaint after being served. (Doc. 10). Joe Hand Promotions has provided a detailed account of the basis for its claims, including a memorandum and supplemental memorandum, (Doc. 11-1; Doc. 15); a declaration from its attorney, (Doc. 11-3); an affidavit from its president, (Doc. 11-24); an affidavit from a private investigator who observed an alleged violation of law committed at Carter's Sports Bar on November 23, 2019, (Doc. 11-2); and social media posts in which Mr. Carter advertised the broadcasting of several pay-per-view programs to which Joe Hand Promotions had

exclusive licensing agreements and for which Mr. Carter did not pay the required fee, (Doc. 11-4, Doc. 11-5, Doc. 11-8).

## Legal Standard for Evaluating a Default Judgment Motion

Federal Rule of Civil Procedure 55 establishes a two-step procedure for obtaining a default judgment. First, when a defendant fails to plead or otherwise defend a lawsuit, as in this case, the clerk of court may enter a clerk's default. Fed. R. Civ. P. 55(a). Second, after entry of the clerk's default, if the defendant is not an infant or an incompetent person, a court may enter a default judgment against the defendant because of the defendant's failure to appear or defend. Fed. R. Civ. P. 55(b)(2). "A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).

"A motion for default judgment is not granted as a matter of right." *Pitts ex rel. Pitts v. Seneca Sports, Inc.*, 321 F. Supp. 2d 1353, 1356 (S.D. Ga. 2004) (internal footnote omitted). After a clerk enters a default pursuant to Rule 55(a), a court must review the sufficiency of the complaint and its underlying substantive merits to determine whether a moving party is entitled to default judgment. *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1370 n.41 (11th Cir. 1997). A court must ensure that the well-pleaded allegations in the complaint state a substantive cause of action and that a sufficient basis exists in the pleadings for the relief sought. *Cotton v. Mass. Mut. Life Ins. Co.*, 402 F.3d 1267, 1278 (11th Cir.

2005). In addition to the pleadings, a court may consider evidence presented in the form of an affidavit or declaration. *Frazier v. Absolute Collection Serv., Inc.*, 767 F. Supp. 2d 1354, 1362 (N.D. Ga. 2011). A defaulting defendant "admits the plaintiff's well-pleaded allegations of fact" for purposes of liability. *Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987) (quoting *Nishimatsu Construction Co., Ltd. v. Houston National Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) (internal quotation marks omitted)).

When assessing damages, a court has "an obligation to assure that there is a legitimate basis for any damage award it enters." *Anheuser Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2007). An evidentiary hearing may be required to determine the amount of damages; however, if the record is sufficient, a court may be able to determine damages without a hearing. *See Sec. & Exch. Comm'n v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005). Thus, although a defaulted defendant admits well-pleaded allegations of liability, "allegations relating to the amount of damages are not admitted by virtue of default." *PNCEF, LLC v. Hendricks Bldg. Supply, LLC*, 740 F. Supp. 2d 1287, 1292 (S.D. Ala. 2010).

## Statement of Facts and Allegations

Joe Hand Promotions is a Pennsylvania corporation with its principal place of business in Pennsylvania. (Doc. 1, p. 1, ¶ 1). Cordell Carter is an individual residing in the State of Alabama. (Doc. 1., p. 2, ¶ 2). Mr. Carter owned and

operated Carter's Sports Bar located at 2520 16th Street North, Birmingham, AL 35204.  Mr. Carter had managerial control over, authorized, and directly participated in and/or assisted in Carter's Sports Bar's unauthorized broadcast of the programs; had a right and ability to supervise the activities Carter's Sports Bar; and had an obvious and direct financial interest in the activities Carter's Sports Bar.  (Doc. 1, p. 1, ¶ 2).

Joe Hand Promotions alleges that it specializes in distributing and licensing premiere sporting events to commercial locations such as bars.  (Doc. 1, pp. 2-3, ¶ 6).  Joe Hand Promotions alleges that it held the exclusive commercial distribution rights to the broadcast of these 12 pay-per-view programs, including all undercard bouts and commentary:

> Deontay Wilder vs. Luis Ortiz II on November 23, 2019;
> Errol Spence Jr. vs. Shawn Porter on September 28, 2019;
> UFC 241: Cormier vs. Miocic 2 on August 17, 2019;
> Manny Pacquiao vs. Keith Thurman on July 20, 2019;
> Terence Crawford vs. Amir Khan on April 20, 2019;
> Errol Spence Jr. vs. Mikey Garcia on March 16, 2019;
> Manny Pacquiao vs. Adrien Broner on January 19, 2019;
> Deontay Wilder vs. Tyson Fury on December 1, 2018;
> UFC 229: Khabib vs. McGregor on October 6, 2018;
> Adrien Broner vs. Jessie Vargas on April 21, 2018;
> Anthony Joshua vs. Joseph Parker on March 31, 2018; and
> Deontay Wilder vs. Luis Ortiz on March 3, 2018

(Doc. 1, pp. 1-2, ¶¶ 1, 7).

Joe Hand Promotions alleges that it entered into agreements with commercial establishments in Alabama that, in exchange for a fee, allowed the

4

businesses to exhibit the programs to their patrons. (Doc. 1, p. 3, ¶ 8). Joe Hand Promotions based the rate it charged a business to exhibit a program on the occupancy of the business. (Doc. 11-1, p. 11; Doc. 11-9; Doc. 11-10; Doc. 11-11; Doc. 11-12; Doc. 11-13; Doc. 11-4; Doc. 11-15; Doc. 11-26; Doc. 11-27). For a commercial establishment with a maximum fire code occupancy of between 51 and 75 individuals, the commercial sublicense fee was $1,450 for Deontay Wilder vs. Luis Ortiz II; $1,200 for Errol Spence Jr. vs. Shawn Porter; $980 for Ultimate Fighting Championship 241; $1,475 for Manny Pacquiao vs. Keith Thurman; $1,200 for Terence Crawford vs. Amir Khan; $1,200 for Errol Spence Jr. vs. Mikey Garcia; $1,500 for Manny Pacquiao vs. Adrien Broner; $1,450 for Deontay Wilder vs. Tyson Fury; and $893 for Ultimate Fighting Championship 229: Khabib vs. McGregor. (Doc. 11-24, p. 3, ¶ 7). The commercial subscription fee for Adrien Broner vs. Jessie Vargas, Anthon Joshua vs. Joseph Parker, and Deontay Wilder vs. Luis Ortiz was $1,200. (Doc. 11-24, p. 3, ¶ 7).

Joe Hand Promotions alleges that Mr. Carter illegally broadcast these 12 events at Carter's Sports Bar, a commercial business, by unauthorized satellite transmission or, alternatively by unauthorized receipt over a cable system, without paying the sublicense fees to Joe Hand Promotions. (Doc. 1, p. 3, ¶¶ 10-11). Mr. Carter showed the unauthorized broadcasts willfully and "with the purpose and

intent to secure a commercial advantage and private financial gain." (Doc. 1, p. 4, ¶ 12).

Private investigator Douglas Sharp went to Carter's Sports Bar on November 23, 2019 and observed the second through fourth rounds of the match between Leduan Barthelemy and Eduardo Ramirez. (Doc. 11-2, p. 1). The match between Barthelemy and Ramirez was an undercard bout that was part of the Deontay Wilder vs. Luis Ortiz II pay-per-view broadcast on November 23, 2019. (Doc. 15, pp. 1-2). Mr. Sharp observed at least eight television sets inside Carter's Sports Bar, and all of them were showing the Barthelemy-Ramirez match. (Doc. 11-2, p. 1). Mr. Sharp counted between 30 and 33 individuals inside Carter's Sports Bar on that date and estimated that the bar's capacity was about 60 people. (Doc. 11-2, pp. 1-2). Mr. Sharp documented his time at Carter's Sports Bar by taking photos and videos. (Doc. 11-2, p. 2).

Joe Hand Promotions alleges that Mr. Carter violated 47 U.S.C. § 605(a) through Carter's Sports Bar's unauthorized reception and publication of the 12 programs to which Joe Hand Promotions had exclusive rights. (Doc. 1, p. 4, ¶ 15). Joe Hand Promotions claims that Mr. Carter's violation of § 605(a) entitles Joe Hand Promotions to bring a private right of action for up to $110,000.00 for each willful violation of 47 U.S.C. § 605, or alternatively for statutory damages, in the discretion of the Court, of up to the maximum amount of $60,000 for each willful

violation of 47 U.S.C. § 533.  (Doc. 1, pp. 4-5, ¶¶ 15-16).  Joe Hand Promotions also claims it is entitled to costs and attorney's fees.  (Doc. 1, p. 4, ¶ 17).

Defendant Cordell Carter, individually and d/b/a Carter's Sports Bar, was properly served on April 9, 2023.  (Doc. 8).  Mr. Carter has not responded to the complaint, and he has not contested Joe Hand Promotions's motion for entry of default against him, (Doc. 10).  After the Clerk entered default against Mr. Carter, Joe Hand Promotions filed a motion for default judgment.  (Doc. 11).

## Analysis

The Court has federal subject matter jurisdiction in this case under 28 U.S.C. § 1331.  In its complaint, Joe Hand Promotions alleges that Cordell Carter, individually and d/b/a Carter's Sports Bar, violated 47 U.S.C. § 605(a) and 47 U.S.C. § 553(a)(1), giving rise to a private right of action for Joe Hand Promotions under federal law.  *See* 47 U.S.C. § 605(e)(3)(A) ("Any person aggrieved by any violation of subsection (a) . . . may bring a civil action in a United States district court or in any other court of competent jurisdiction."); 47 U.S.C. § 553(c)(1) ("Any person aggrieved by any violation of subsection (a)(1) of this section may bring a civil action in a United States district court or in any other court of competent jurisdiction.").  Because a federal question is presented on the face of Joe Hand Promotions's complaint, this Court has subject matter jurisdiction.  *See, e.g.*, *Kemp v. Int'l Bus. Machines Corp.*, 109 F.3d 708, 712 (11th Cir. 1997).

A default judgment is valid only when a court has personal jurisdiction over the defendant. *Rash v. Rash*, 173 F.3d 1376, 1381 (11th Cir. 1999); *see also Sys. Pipe & Supply, Inc. v. M/V Viktor Kurnatovskiy*, 242 F.3d 322, 324 (5th Cir. 2001) ("When entry of default is sought against a party who has failed to plead or otherwise defend, the district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties.") (alteration omitted). Based on the record before the Court, Mr. Carter is a resident of Alabama. (Doc. 1, p. 1, ¶ 2). Mr. Carter was served in Birmingham, Alabama, (Docs. 3, 8), and he has not provided evidence to contest residency. The complaint alleges that Mr. Carter owns and/or operates Carter's Sports Bar in Birmingham, Alabama. (Doc. 1, p. 1, ¶ 2). The pleadings and evidence are sufficient to allow the Court to exercise personal jurisdiction over Mr. Carter individually and d/b/a Carter's Sports Bar.

Section 605(a) prohibits the interception and knowing publication of intercepted "interstate or foreign communication by radio" by a person not entitled to receive the communication. 47 U.S.C. § 605(a). To establish liability, Joe Hand Promotions must show that: (1) the defendant intercepted the transmission; (2) the defendant did not pay for the right to receive the transmission; and (3) the defendant displayed the transmission to patrons of his commercial establishment. *See, e.g.*, *Joe Hand Promotions, Inc. v. Neal*, No. 14-348-KD-C, 2015 WL

4039076, at *4 (S.D. Ala. July 2, 2015) (citing *Zuffa, LLC v. Al-Shaikh*, 2011 WL 1539878, at *4 (S.D. Ala. April 21, 2011)). Joe Hand Promotions has alleged and provided evidence that Cordell Carter, individually and d/b/a Carter's Sports Bar, willfully violated § 605 through an unauthorized broadcast of the 12 programs listed in the complaint for financial gain or commercial advantage. Mr. Carter has not contested the evidence, and the Court finds a sufficient basis in the pleadings to grant Joe Hand Promotions relief under the statute.

Joe Hand Promotions has elected to pursue remedies solely under 47 U.S.C. § 605. (Doc. 11-1, p. 5). Under 47 U.S.C. § 605, Joe Hand Promotions may recover statutory damages of up to $10,000.00 for each statutory violation. 47 U.S.C. § 605(e)(3)(C)(i)(II). If a court finds that the violation of the statute was committed "willfully and for purposes of direct or indirect commercial advantage or private financial gain," then the court may award additional damages of up to $100,000.00 for each violation. 47 U.S.C. § 605(e)(3)(C)(ii). Furthermore, pursuant to 47 U.S.C. § 605(e)(3)(B)(iii), a court shall award full costs to a prevailing aggrieved party, including reasonable attorney fees.

Joe Hand Promotions seeks a total of $77,665 for Mr. Carter's violations of § 605. (Doc. 11-1, p. 15). Specifically, Joe Hand Promotions seeks $12,548 as statutory damages under § 605(e)(3)(C)(i)(II) for the licensing fees Mr. Carter did not pay for the 12 unauthorized pay-per-view programs, $62,740 (five times the

9

statutory damages) under § 605(e)(3)(C)(ii) for Mr. Carter's willful violations, $1,500 for attorney fees, and $877 for costs. (Doc. 11-1, p. 15).

The Court finds that the record is sufficient to award damages without a hearing. *See Smyth*, 420 F.3d at 1232 n.13.[1] To determine the appropriate amount of damages within the statutory ranges under § 605(e)(3)(C)(i)(II), the Eleventh Circuit has not established a "uniform formula." *Joe Hand Promotions, Inc. v. McBroom*, No. 5:09-cv-276(CAR), 2009 WL 5031580, *5 (M.D. Ga. Dec. 15, 2009). "Typically, courts apply one of two methods: 1) award damages as a flat sum; and 2) other courts—particularly those within the Eleventh Circuit award the plaintiff the license fee the defendant, based on its maximum capacity, would have paid if it had legally purchased the event." *Zuffa*, 2011 WL 1539878 at *7 (utilizing "the number of patrons approach") (internal citations and quotations omitted). The Court finds that $12,548 as damages for the license fees that Mr. Carter would have paid if he legally purchased the 12 programs is a reasonable award under § 605(e)(3)(C)(i)(II).

Under § 605(e)(3)(C)(ii), a court may award enhanced damages "when the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain." *Zuffa*, 2011 WL 1539878 at *8

---

[1] Initially, the Court set a hearing and requested clarification regarding Mr. Sharp's affidavit. (Doc. 14 and minute entry for a hearing held on Nov. 7, 2023). Joe Hand Promotions's supplemental memorandum, (Doc. 15), clarified the issue. Therefore, the Court did not set another hearing.

(internal quotations and citations omitted). "[Broadcasting an event] without . . . authorization is enough to show a willful violation committed for the purpose of direct or indirect financial gain." *McBroom*, 2009 WL 5031580 at *5. In determining the amount of enhanced damages, courts consider several factors: "(1) the number of violations; (2) defendant's unlawful monetary gains; (3) plaintiff's significant actual damages; (4) whether defendant advertised for the event; and (5) whether defendant collected a cover charge." *McBroom*, 2009 WL 5031580 at *5. Courts typically "force the defendant to pay some multiple of the license fee." *McBroom*, 2009 WL 5031580 at *5.

Here, through Mr. Hand's affidavit, Joe Hand Promotions has shown that Mr. Carter did not accidentally or mistakenly intercept the 12 programs listed in the complaint. (Doc. 11-24, p. 5, ¶¶ 8, 9, 16). Joe Hand Promotions has shown that Mr. Carter advertised and willfully broadcasted 12 programs for financial gain without Joe Hand Promotions's permission. (Doc. 11-2; Doc. 11-24). Therefore, enhanced damages are appropriate. The Court has considered the above factors and awards enhanced damages of $62,740, which equals five times the statutory damages.

Joe Hand Promotions has shown that it expended or will expend $1,500 in attorney fees for six hours of work at $250 per hour, and it incurred $877 in costs for filing and service of process fees. (Doc. 11-3, p. 2, ¶¶ 11, 12). In the Court's

experience and discretion, these amounts are reasonable.

## Conclusion

By separate order, the Court will grant Joe Hand Promotions's motion for default judgment, (Doc. 11); enter default judgment in favor of plaintiff Joe Hand Promotions and against defendant Cordell Carter, individually, and d/b/a Carter's Sports Bar; and award damages in the amounts discussed above.

**DONE** and **ORDERED** this January 3, 2024.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE